UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES

   V.                                  CR. NO.  04-10202-RWZ

EARL DICKERSON

MOTION TO SUPPRESS EVIDENCE—WARRANTLESS SEARCH—WITH INCORPORATED MEMORANDUM OF LAW

      Defendant Earl Dickerson, by his attorney, moves that this Court, pursuant to Federal Rule of Criminal Procedure 12, suppress all evidence, including all derivative evidence, seized as a result of the warrantless search of his green Toyota Camry ("Toyota") on March 9, 2004 by Boston police officers; said search and seizure was made in violation of  Mr. Dickerson's rights guaranteed to him by the Fourth Amendment to the United States Constitution.  The evidence to be suppressed includes: one .40 caliber Ruger, ammunition, cocaine, and all statements made by Mr. Dickerson regarding said evidence.

      Due to Mr. Dickerson's reasonable expectation of privacy in his vehicle and closed compartments therein, the police officers were required under the Fourth Amendment to obtain a search warrant before conducting a search of the Toyota and the subsequent search of the locked container therein.  Additionally, the Government is lacking any facts that would support the application of any exceptions that would have allowed the Boston Police to bypass the Fourth Amendment's requirement of obtaining a search warrant before they searched both the Toyota and the locked container.

1

## STATEMENT OF THE CASE[1]

On March 9, 2004, Boston Police Officer Paul T. Quinn, applied to the Dorchester District Court for warrants to search 9 Wescott Street, Apartment #2, and a black 1997 Landrover automobile. Quinn's eight-page affidavit in support of his applications for the search warrants included brief references to Mr. Dickerson's Toyota: green Toyota Camry parked on the street in the area of 9 Wescott Street in Dorchester; Toyota registered to Earl Dickerson of 9 Wescott Street, Apartment #2; "Range Rover…utilized more than green Camary…Camary often remained parked in same spot." Although Quinn's affidavit speculated that the Landrover contained contraband, these speculations did not include the Toyota. At approximately 8:07 the same day, the search warrants were authorized and executed.

The items seized in the house include: a white Nike sneaker, a half ounce of crack cocaine, an Ashiba pocket scale, a black wallet with personal papers and identification in the name of Earl Dickerson, several boxes of sandwich bags, a Nextell cell phone, a Nextell telephone statement, service receipt in the name of Earl Dickerson for the Landrover, a shoebox with personal papers in the name of Earl Dickerson and photographs, a .40 caliber S & W Live Round, a pair of Bushnell binoculars, house keys, Toyota keys, and Landrover keys. The search of the Landrover uncovered its registration.

During the search of Mr. Dickerson's home, Boston Police Officer Broderick engaged him in a conversation concerning his vehicles. Broderick asked Mr. Dickerson

---

[1] Information set forth based on Boston Police Incident Report and Search Warrant Applications.

"what he had for vehicles?" Mr. Dickerson replied that he "just had the Rangerover." Broderick responded, "What about your other car[,] the Toyota …the car out in front of the house that's registered to you." Mr. Dickerson replied, "Oh yeah[.] I got that car when I first got out of jail from my friend[,] but it don't [sic] run right."

After this conversation, Boston Police Officer Feeney approached the Toyota where it was parked on Westcott Street. Feeney alleges that he observed a closed compartment within the vehicle. Feeney, presumably using the keys taken during the search of Mr. Dickerson's home, entered, and subsequently searched the Toyota, and a locked compartment therein. Inside the locked compartment, Feeney seized: 1 - .40 caliber Ruger with 11 rounds of ammunition, approximately 62 (57?) grams of crack cocaine, a urinal cake, and two air fresheners. Mr. Dickerson, when questioned about the items seized during Feeney's warrantless search of the Toyota, made several statements regarding them.

Mr. Dickerson did not consent to the search of his Toyota, or the locked compartment therein.

ARGUMENT

I.    MR. DICKERSON HAS STANDING TO CHALLENGE THE SEARCH AND SEIZURE OF ITEMS FROM THE TOYOTA AND THE LOCKED COMPARTMENT THEREIN.

**A. The Toyota**

Mr. Dickerson has standing to challenge the search and seizure of items from his Toyota. "[T]o claim the protection of the Fourth Amendment depends… whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Rakas v. Illinois, 439 U.S. 128, 143 (1978). "The First

Circuit has held that the following factors are relevant to a privacy expectation: 'legitimate presence in the area searched, possession or *ownership of the area searched* or the property seized, ability to control or exclude others' use of the property, and a subjective expectation of privacy.'" United States v. Moroney, 220 F.Supp. 2d 52, 56 (1st Cir. 2002) quoting, United States v. Lochan, 674 F.2d 960, 965 (1st Cir. 1982).

Mr. Dickerson owns the Toyota, and registered it in his name. Therefore, Mr. Dickerson has standing to challenge the search of, and seizure from, the Toyota due to his "legitimate expectation of privacy" in it.

### B. The Locked Compartment

Additionally, Mr. Dickerson has standing to challenge the search and seizure of items from the locked compartment within the Toyota. The United States Supreme Court defines a container as "any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like." New York v. Belton, 453 U.S. 454, 461 n.4 (1981). If a container is opaque, or a person is able to discern what an item is from the container's shape, then there is not a reasonable expectation of privacy in the container. See, United States v. Weber, 668 F.2d 552, 562 (1st Cir. 1981) (holding that if an object is "within, or enclosed, in another object [and] cannot be objectively known, or at least reasonably believed to be known, by external inspection, without opening or undoing that object, a warrant is needed to discover it"). If the container is not opaque then the objective test for the expectation of privacy in a container is whether the container is "closed." Id. at 562.

4

The locked compartment in Mr. Dickerson's car was a "container" and subject to the protections of the Fourth Amendment. Mr. Dickerson's locked compartment is a "non-opaque" receptacle located within the passenger compartment of his Toyota. Additionally, the compartment's shape did not provide any indication of its contents. This compartment was "closed," indeed locked, because it required an elaborate combination to be completed before it would open. Therefore, Mr. Dickerson had a reasonable expectation of privacy in this locked compartment within his Toyota. Due to Mr. Dickerson's reasonable expectation of privacy in this locked compartment, he has standing to challenge the warrantless search of, and seizure from it.

II.  THERE WERE NO EXCEPTIONS TO THE SEARCH WARRANT REQUIRMENT THAT WOULD PERMIT THE WARRANTLESS SEARCH OF MR. DICKERSON'S TOYOTA OR THE LOCKED CONTAINER THEREIN.

The Fourth Amendment grants "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." United States Constitution Amendment IV. "While the interior of an automobile is not subject to the same expectations of privacy that exist with respect to one's home, a car's interior as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police." New York v. Class, 475 U.S. 106, 114 (1986). It is "*per se* unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions" for police to search and seize items without a search warrant. Katz v. United States, 389 U.S. 347, 357 (1967). The government bears the burden of proving that the warrantless search and seizure conducted by the Boston Police falls within a recognized exception to the warrant requirement. See, United States v. Lewis, 816 F.Supp. 789, 792 (D. Mass. 1993) citing, United States v. Cruz Jiminez, 894 F.2d 1, 6 (1st Cir. 1990). The warrantless search of Mr. Dickerson's

5

Toyota and the locked container therein do not fall within the any of the well-delineated exceptions to Fourth Amendment's warrant clause.

### A. Automobile exception

The automobile search warrant exception does not apply to the present case because the Boston Police did not have probable cause to search Mr. Dickerson's Toyota.

"The word 'automobile' is not a talisman in whose presence" Mr. Dickerson's Fourth Amendment protections against unreasonable searches and seizures fade away and disappears. Coolidge, 403 U.S. at 461-62. "Under the 'vehicle exception' to the Fourth Amendment's warrant requirement, the necessary predicate for law enforcement officers' warrantless search of a motor vehicle is that they have probable cause to believe that the car contains contraband or other evidence of criminal activity." United States v. Panitz, 907 F.2d 1267, 1271 (1st Cir. 1990).

> In order for probable cause to search to exist, the officer must have reasonably trustworthy information of supporting facts and circumstances such as would persuade a person of reasonable caution to believe the search is justified. Certainty is not required. But in the absence of supporting facts, the officer's suspicion or personal belief that probable cause exists is not enough. … There had to be particular facts indicating that, at the time of search, the vehicle or a container within it carried contraband, evidence of crime, or other seizable matter.

United States v. Infante-Ruiz, 13 F.3d 498, 502 (1st Cir. 1994) (citations omitted).

Prior to entering and searching Mr. Dickerson's Toyota, Boston Police had neither the information nor a reasonable suspicion that connected the Toyota with any illegal activity. Although Feeney claims to have observed what he described as a "hidden compartment" from outside the Toyota, the contents of the closed container were not in plain view from the outside of the vehicle nor could they be discerned from

6

its shape. Mere observation of what the officer believed was a secure compartment or container does not justify entry into the Toyota or opening the compartment.

The presence of a closed container within the vehicle did not provide the Boston Police with probable cause to search Mr. Dickerson's Toyota. The "subjective good faith" beliefs of a police officer cannot be the sole basis in establishing probable cause. Beck v. Ohio, 379 U.S. 89, 97 (1964); See also, Infante-Ruiz, 13 F.3d at 502. If the mere presence of a closed container in a vehicle provided probable cause to search a vehicle, then police officers could search any car with a non-standard interior container. Additionally, Feeney had no lawful reason to believe that the Toyota or the locked compartment contained contraband. See, Florida v. White, 526 U.S. 559, 563-64 (1999) (holding that police officers are required to have probable cause before a warrantless search of an automobile).

If Boston Police had probable cause to search the Toyota, they would have sought a warrant when they sought the search warrants for Mr. Dickerson's residence and Landrover. They did not. There is no mention in Quinn's affidavits of Mr. Dickerson engaging in any illegal activity involving the Toyota. In fact, Quinn's affidavit declares that the information gleaned from the surveillance led them to believe that the Toyota rarely moved. Additionally, Quinn's affidavit documenting the Boston Police surveillance failed to document any instances of Mr. Dickerson entering, exiting, moving, or even being within the general vicinity of the Toyota. Thereafter, during the execution of the search warrants, no facts emerged which provided or established probable cause to justify the warrantless search of Mr. Dickerson's Toyota.

The Boston Police did not have probable cause to search Mr. Dickerson's Toyota. Therefore, the automobile exception does not apply.

**B. Plain view**

For an item to be in plain view, the officer must be in a lawful place to observe the object, and the object's incriminating nature must be "immediately apparent" from the officer's position. <u>Horton v. California</u>, 496 U.S. 128, 136 (1990). Sometime after 8:07 PM on March 9, 2004, Feeney stated that he observed a closed compartment from outside of Mr. Dickerson's Toyota. However, it is not immediately apparent when standing outside of a vehicle that a closed container is of an incriminating nature or if it contains contraband. Assuming *arguendo* that the character of the locked compartment gave rise to a belief that there was contraband stored within it, Feeney did not have a "lawful right of access" to enter the vehicle and open the compartment to see what might be contained therein. <u>Horton</u>, 496 U.S. at 137 (holding that a police officer must have a lawful right of access to seize an object observed in plain view. Therefore, the plain view exception to the warrant requirement does not apply to the present case.

**C. Search incident to arrest.**

The search of the Toyota cannot be included as search incident to Mr. Dickerson's arrest. An arresting officer may search the "grabbing" or "lunging" area of the suspect when the suspect is arrested. <u>Maryland v. Buie</u>, 494 U.S. 325 (1990). Mr. Dickerson's arrest occurred inside his apartment. Therefore, the area of immediate control that the Boston Police could reasonably search would be within Dickerson's apartment—the Toyota was parked on the street. Clearly, the search incident to arrest exception cannot apply to the Toyota.

**D. Inevitable discovery.**

The Government cannot show that the evidence obtained via the warrantless search of Mr. Dickerson's Toyota is admissible under the inevitable discovery exception

8

to the exclusionary rule for violations of the Fourth Amendment.

Under the Supreme Court's inevitable discovery doctrine, evidence unlawfully obtained through, *inter alia*, a warrantless search is inadmissible unless the prosecution can establish, "by a preponderance of the evidence[,] that the [evidence] ultimately or inevitably would have been discovered by lawful means.'" United States v. Torres, 274 F.Supp.2d 146, 160 (D.R.I. 2003) citing, Nix v. Williams, 467 U.S. 431, 444 (1984)(inevitable discovery exception inapplicable to warrantless search of defendant's home).  The First Circuit defines inevitable as "a *high probability* that the evidence would have been discovered by lawful means." Id. at 160 citing, United States v. Rogers, 102 F.3d 641, 646 (1st Cir. 1996).

Under an active pursuit analysis of the inevitable discovery doctrine, the evidence obtained in the warrantless search of Mr. Dickerson's Toyota and the locked compartment therein is inadmissible. In United States v. Sylvestri, 787 F.2d 736 (1st Cir. 1986), the court held that an "active pursuit" analysis was not a bright-line requirement in inevitable discovery cases where a warrant was obtained subsequent to a warrantless search. Id. at 746. However, in cases where investigators fail to secure a warrant after a warrantless search, such as the case *sub judice*, the Sylvestri court held that an active pursuit analysis is appropriate. Id. at 745; See also, Torres, 274 F.Supp.2d at 161. This, the Torres Court explained, is to require the government to prove that discovery was inevitable using "evidence of historical facts beyond mere speculation that the government intended to obtain a search warrant, or had begun to obtain one." Id. at 161.

To meet the requirements demonstrating that police were engaged in an active pursuit, the police must demonstrate:

9

> (1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct, (2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct, and (3) that the police also prior to the misconduct were actively pursuing the alternate line of investigation.

Sylvestri, 787 F.2d at 742 citing, United States v. Cherry, 759 F.2d 1196, 1204 (5th Cir. 1985). Additionally, the Sylvestri Court outlined three basic concerns regarding the application of the inevitable discovery exception:

> (1) whether the legal means are truly independent; (2) whether the use of the legal means and the discovery by that means are truly inevitable; and (3) whether the application of the inevitable discovery exception provides either an incentive for police misconduct or significantly weakens Fourth Amendment protection.

Id. at 744. In warrantless search cases in which a warrant is never sought but investigators believe probable cause exists, the Sylvestri Court held that allowing the application of the inevitable discovery rule would "substantially weaken" the Fourth Amendment's warrant clause by replacing its requirement for a detached and neutral magistrate with a preponderance of the evidence standard. Id. at 744-745; See also, Torres, 274 F.Supp.2d at 162, 162 n.7.

    Similar to Torres, there is a lack of any evidence that the Boston Police were actively pursuing, or had begun the process to pursue a search warrant for Mr. Dickerson's Toyota. The record fails to show a high probability that the Boston Police would have discovered the evidence through lawful means. Further analysis of the historical facts of this case reveal that when faced with a detached and neutral magistrate, the Boston Police did not seek a warrant to search the Toyota. Assertions that the Boston Police would have, or could have obtained a warrant and therefore discovery was inevitable, the Torres Court held, is to engage "in precisely the type of speculation that Sylvestri warned against." Id. at 162 ("post hoc suggestions of

alternative legal means will not be accepted as a basis for application of the inevitable discovery exception."). Additionally, the Boston Police did not have probable cause to search Mr. Dickerson's Toyota. To allow the application of the inevitable discovery exception to the evidence seized from Mr. Dickerson's Toyota via the warrantless search, when probable cause had not been established, would weaken the protections of the Fourth Amendment beyond what was held unacceptable by both the Sylvestri and Torres Courts.

Concerns for weakening Fourth Amendment protection, and the failure of the Boston Police to obtain a warrant, or pursue means that were lawful and independent of the warrantless search of Mr. Dickerson's Toyota, render the inevitable discovery exception inapplicable.

The search and arrest of Mr. Dickerson's did not fall within any of the well-delineated exceptions that would preclude the requirement of obtaining a search warrant before the search of the Toyota. The evidence seized via the warrantless search of the Toyota violated Mr. Dickerson's rights under the Fourth Amendment, and, as a result, must be suppressed.

   III.   THE SEARCH OF THE TOYOTA WAS OUTSIDE THE SCOPE OF THE SEARCH WARRANTS FOR BOTH 9 WESCOTT STREET AND THE 1997 BLACK LANDROVER RANGEROVER.

"The authority to search is limited by the specific places described in the warrant and cannot be extended to additional locations." United States v. Baldyga, 233 F.3d 674, 683 (1st Cir. 2000).

The search of the Toyota was beyond the scope of the two search warrants issued by the Dorchester District Court.  The warrants authorized the Boston Police to

11

search two specific places: the apartment at 9 Wescott Street and the Landrover vehicle.  Without probable cause, the Boston Police cannot extend the scope of the search warrants to encompass a search beyond the areas the judicial officer has authorized.  See generally, United States v. Bonner, 808 F.2d 864, 867-68 (1st Cir.1986).

Furthermore, the Toyota could not be included within the scope of the search warrant for 9 Wescott Street because the vehicle was not located on the premises or within the curtilage of 9 Wescott Street.  "Curtilage" is the area that is "intimately" tied with the activities of the home.  See, United States v. Dunn, 480 U.S. 294, 301 (1987).  In United States v. Roberts, 811 F.Supp. 21(1st Cir. 1993), the court held that marijuana grown across the public road from a house was not included within the curtilage of the home. Id. at 23.  The Boston Police Incident Report states that the Toyota was legally parked on Wescott Street, a public street.  Therefore, the search warrant cannot extend to the search of the Toyota because the automobile was not located on the premises nor was it within the curtilage of 9 Wescott Street.

IV.   THE UNLAWFUL SEARCH OF MR. DICKERSON'S TOYOTA REQUIRES THAT ALL EVIDENCE, INCLUDING ALL DERIVATIVE EVIDENCE, RESULTING FROM THAT SEARCH BE SUPPRESSED.

The fruits harvested from the Boston Police's unlawful search of Mr. Dickerson's Toyota, including the statements Mr. Dickerson made concerning the items seized during that search, must be suppressed.

Under the exclusionary rule, "evidence seized during an unlawful search," cannot "constitute proof against the victim of the search." Wong Sun v. U.S., 371 U.S. 471, 484 (1963). "[T]he exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or

that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint'" Murray v. United States, 487 U.S. 533, 536-537 (1988) (citations omitted). Statements made as a result of an unlawful search also require exclusion. See, Wong Sun, 371 U.S. at 485 ("[V]erbal evidence which derives so immediately from an unlawful entry… [are] no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion.").

In the instant case, the exclusionary rule requires suppression of the evidence seized during the warrantless search of Mr. Dickerson's Toyota. There is a direct connection between the unlawful search and the discovery of the evidence, and the record is devoid of any facts or circumstances that dissipate the taint resulting from Boston Police's violation of Mr. Dickerson's Fourth Amendment rights. Additionally, the statements Mr. Dickerson made concerning the items seized during the unlawful search and the search itself are directly connected, and, as a result, must be suppressed.

## CONCLUSION

For the above stated reasons all items seized by the Boston Police from Mr. Dickerson's Toyota and the locked container therein, including any derivative evidence, must be suppressed as evidence against him.

EARL DICKERSON<br>
By his attorney,

                                            /s/ Elliot M. Weinstein
                                            Elliot M. Weinstein
                                            BBO #520400
                                            228 Lewis Wharf
                                            Boston, MA  02110
                                            617-367-9334